# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

MONEYGRAM INTERNATIONAL, INC.,
2828 North Harwood Street, Floor 15
Dallas, TX 75201
(214) 999-7552

        Plaintiff,

-against-

CONSUMER FINANCIAL PROTECTION BUREAU,
1700 G Street NW
Washington, DC 20552
(855) 411-2372

        Defendant.

---

Case No. 1:23-cv-00541

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**(Freedom of Information Act, 5 U.S.C. § 552)**

1

Plaintiff MoneyGram International, Inc. ("Plaintiff," "MoneyGram," or the "Company"), by and through undersigned counsel, brings this action under the Freedom of Information Act ("FOIA") 5 U.S.C. § 552, challenging the Consumer Financial Protection Bureau's ("Defendant" or the "CFPB") improper denial of a request for records. Plaintiff seeks a declaratory judgment establishing that the CFPB has violated FOIA, declaratory and injunctive relief to compel the production of agency records improperly withheld and compliance with the requirements of FOIA, reasonable attorneys' fees and costs incurred in this litigation, and all other appropriate relief to which it may be entitled. In support thereof, Plaintiff alleges as follows:

## NATURE OF THE ACTION

Procedural Background

1. This action arises from the CFPB's unlawful withholding of records in response to Plaintiff's January 21, 2022 FOIA request for communications concerning MoneyGram made before and around the time of Rohit Chopra's confirmation as Director of the CFPB (the "Request"). MoneyGram, through undersigned counsel, issued the Request only after it had become apparent, on information and belief, that Mr. Chopra, and others acting on his behalf, had engaged in improper communications with CFPB staff about the CFPB's investigation into MoneyGram before Mr. Chopra was confirmed and had assumed the role of Director of the CFPB. Given Mr. Chopra's past and very public hostility toward the Company, MoneyGram was concerned that the existence and content of such premature communications by Mr. Chopra would be relevant to, and cast doubt upon, the lawfulness and legitimacy of the CFPB's pending enforcement action against the Company.

2. After six months of correspondence between the CFPB FOIA Office and MoneyGram's counsel about the Request, the CFPB FOIA Office issued a summary decision on

1

June 29, 2022 that acknowledged the existence of responsive documents, refused to release any documents to Plaintiff, failed to provide a reasonable estimate of responsive documents, and failed to demonstrate any efforts to segregate and release non-exempt information.

3. Plaintiff timely appealed, and the CFPB's Office of the General Counsel issued a final determination letter on August 11, 2022 that remanded the Request back to the CFPB FOIA Office, on the ground that the Office had failed to provide an estimate of the volume of responsive records, and failed to demonstrate that it made a reasonable effort to segregate and produce nonexempt information. The CFPB's Office of the General Counsel affirmed the remaining portions of the CFPB FOIA Office's final decision.

4. On August 15, 2022, the CFPB FOIA Office issued a letter to MoneyGram's counsel acknowledging that the Request had been remanded to the CFPB FOIA Office. That same day, MoneyGram sent an email specifically requesting information concerning timing and reiterating the request that the CFPB conduct a reasonable search for responsive records and segregate and disclose non-exempt material as required by FOIA. Months later, MoneyGram's counsel sent another letter to request an update and reiterate the requests. The CFPB ignored both communications and failed to respond to MoneyGram's outreach since the remand. The CFPB's silence and constructive denial of MoneyGram's Request prompted the filing of this Complaint. As a result of the CFPB's inexcusable delays and stonewalling, over 13 months have now passed and the CFPB has not produced even one single document to MoneyGram. The CFPB has also completely ignored the Request and MoneyGram's requests for additional information for the past six months.

Factual Background

5.  MoneyGram is regulated by the CFPB.  Prior to the Request, the CFPB conducted examinations of MoneyGram and ultimately served MoneyGram with a civil investigative demand in March 2020 requesting documents to show compliance with certain federal consumer laws. MoneyGram has cooperated fully with the CFPB's investigation and timely produced all requested documents and information to the CFPB.

6.  In early 2021, the CFPB staff abruptly and inexplicably changed its negotiation posture toward MoneyGram.  The CFPB's changes became noticeable shortly after Mr. Chopra was nominated to become Director of the CFPB in February 2021 and before he was confirmed by the U.S. Senate in on September 30, 2021.  At the time, Mr. Chopra was still a commissioner with the Federal Trade Commission ("FTC"), without authority over the CFPB or any involvement in the CFPB's investigations.  Mr. Chopra was sworn in as Director of the CFPB on October 12, 2021.

7.  As background, Mr. Chopra has a well-documented practice of using his official positions to publicly attack corporations, including specific attacks against MoneyGram.  For example, in November 2018, when Mr. Chopra was a FTC commissioner, he used his official Twitter account to engage in a public "tweetstorm" against MoneyGram following MoneyGram's agreement to extend an existing stipulated order with the FTC.  In 11 consecutive tweets on a single day, Mr. Chopra described an alleged "corporate crime story about a company called MoneyGram," and falsely claimed that MoneyGram had engaged in "a decade of lawbreaking." Among other things, Mr. Chopra warned that "[l]aw enforcement needs to keep a close eye on [MoneyGram] and other companies that are willing to break the law while lining the pockets of their investors."  Exhibit A (screenshot of statements of Rohit Chopra, @chopracfpb, Twitter

(Nov. 9, 2018, 2:09 PM), https://twitter.com/chopracfpb/status/1060972778592104458). Mr. Chopra's public accusations ignored the substantial investment that MoneyGram had made to enhance its compliance program, becoming an industry compliance leader with record-low fraud complaints.

8. More recently, Mr. Chopra has been sharply criticized for engaging in apparently unauthorized interagency communications and actions. For example, in or around October 2021, after Mr. Chopra had left the FTC, he circumvented existing procedures and took advantage of an obscure rule to cast a series of "zombie" votes that broke the FTC's then 2-2 partisan split on several key issues at the FTC, including on a major shift in merger policy.[1]

9. Shortly after his confirmation as Director, the CFPB and MoneyGram reached an impasse in their discussions concerning the CFPB investigation, and MoneyGram explained that it was preparing for litigation. The CFPB then tried to recruit the New York Department of Financial Services ("DFS") to join its case in order to manufacture venue in the Southern District of New York instead of the Northern District of Texas where MoneyGram is domiciled and where the relevant alleged activity occurred. After DFS declined to join the CFPB's case, the CFPB turned to the New York State Attorney General ("NYAG") who agreed to join the case without conducting any meaningful investigation. After three months of renewed discussions, the CFPB and NYAG filed a lawsuit against MoneyGram on April 21, 2022 in the United States District Court for the Southern District of New York for alleged violations of the Remittance Rule (12 C.F.R. pt. 1005), the Consumer Financial Protection Act of 2010 (12 U.S.C. §§ 5531(a),

---

[1] *See* The Many Abuses of Lina Khan's FTC, available at https://www.wsj.com/articles/christine-wilson-resigns-federal-trade-commission-lina-khan-ftc-87328998; *see also* Zombies to the Rescue: The arcane voting rule that could save Dems' antitrust agenda, available at https://www.politico.com/news/2021/11/08/voting-rule-democrats-antitrust-519767.

5536(a)(1), 5552, 5564, 5565), and New York Executive Law § 63(12).[2] MoneyGram responded by filing motions to dismiss and to transfer the case from the Southern District of New York to the Northern District of Texas, setting forth the naked forum shopping which had occurred. *See* Mot. to Transfer Case to the Northern District of Texas and Notice of Mot. to Dismiss the First Amended Complaint, *Consumer Financial Protection Bureau et al. v. MoneyGram International Inc. et al.*, No. 1:22-cv-03256, Dkt. (S.D.N.Y. August 4, 2022), ECF No. 30-31. The motions have been fully briefed and are pending.

10. Given the coincidental timing and inexplicable change in the CFPB's enforcement posture toward MoneyGram, and the brazen nature of the CFPB's forum shopping and recruitment of two separate New York authorities to manufacture venue, in January 2021, MoneyGram submitted formal public records requests under FOIA to various agencies, including the CFPB, to determine whether the existence and contents of premature communications evidence improper bias against MoneyGram that motivated the CFPB's enforcement decisions.

11. From the CFPB's stonewalling of the Request, to Mr. Chopra's past and public hostility toward MoneyGram, to Mr. Chopra's skirting of procedure to cast tie-breaking votes at the FTC after he was confirmed as Director of the CFPB—it has become evident that Mr. Chopra has played fast-and-loose with protocol and that the CFPB is hiding relevant communications involving Mr. Chopra and his staff. Such events further suggest that Mr. Chopra engaged in premature discussions of CFPB-related matters before he was confirmed as Director of the CFPB, meaning that no valid exemption would apply to any such communications that predated his swearing in as Director on October 12, 2021.

---

[2] After filing the lawsuit, Mr. Chopra made additional false and misleading comments on Twitter and in two separate press releases about the Company.

12.     FOIA requires the CFPB to provide prompt access to communications sought in the Request and/or lawful reasons for denial. The CFPB's actions in responding to Plaintiff's Request have defied the FOIA's purpose of transparency, disregarded the "presumption in favor of disclosure," and resisted any "spirit of cooperation" that might have ensured that "openness prevails." FOIA Pres. Mem., 74 Fed. Reg. 4683, 4683 (Jan. 21, 2009). *See also* Attorney General Merrick Garland's March 15, 2022 Memorandum for Heads of Executive Departments and Agencies regarding Freedom of Information Act Guidelines (discussing four tenets applicable to FOIA responses: (1) a presumption of openness; (2) proactive disclosure; (3) removing access barriers and reducing request backlogs; and (4) ensuring fairness and effectiveness in the FOIA process).

## THE PARTIES

13.     Plaintiff MoneyGram is a global money services business. MoneyGram offers remittance services to millions of consumers in the United States, enabling consumers to transfer funds domestically and abroad. MoneyGram is incorporated in Delaware and manages its legal and compliance operations from its headquarters in Dallas, Texas, located at 2828 North Harwood Street, Floor 15, Dallas, TX 75201.

14.     Defendant Consumer Financial Protection Bureau is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered at 1700 G Street NW Washington, DC 20552. Defendant CFPB is in control and possession of the records sought by Plaintiff.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552(a)(6)(C)(i), and 28 U.S.C. § 1331, because this action arises under FOIA, and Plaintiff has exhausted its administrative remedies.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B) because the Defendant agency is located in the District of Columbia and is in possession of the records sought by Plaintiff.

17.     This Court has authority to award injunctive relief pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202.

18.     This Court has authority to award reasonable attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E).

19.     This Court has authority to award declaratory relief pursuant to 28 U.S.C. § 2201.

## FACTUAL ALLEGATIONS

*MoneyGram's Initial FOIA Request*

20.     On January 21, 2022, MoneyGram's counsel submitted the Request to the CFPB on behalf of MoneyGram.  The Request sought all communications between the CFPB that occurred on or after January 1, 2018, concerned MoneyGram International, Inc., and involved any of the following entities or individuals: the FTC; DFS; NYAG; Public Citizen, Inc.; Rohit Chopra; Jen Howard; and/or Rebecca Smullin. The request was to include, but not be limited to, all communications by and between the CFPB and then-FTC Commissioner Rohit Chopra and/or then-FTC Commissioner Chopra's Chief of Staff Jen Howard concerning MoneyGram that occurred before the confirmation of Chopra as Director of the CFPB on or about September 30, 2021.  The Request was also to include, but not be limited to, all communications by and between the CFPB and Rebecca Smullin concerning MoneyGram before Ms. Smullin began working for the CFPB in or around October 2021.  Communications included emails and text messages and other forms of ephemeral messaging that occurs on mobile phones, among other things. A true and correct copy of the Request is attached as Exhibit B.

7

*Reasonable Efforts to Narrow the Request*

21.     The CFPB acknowledged receipt of the Request and set up a call with MoneyGram's counsel to discuss the Request.

22.     Following conversations between the CFPB's Office of the Chief Data Officer and MoneyGram's counsel, and confirmed in a January 26, 2022 email, MoneyGram's counsel agreed, in an effort to narrow and expedite a response to the Request, that CFPB would run the below searches across CFPB emails in the first instance. In so agreeing, MoneyGram's counsel reserved, and did not waive, the right to request the entirety of the original Request:

| 2022-00115 Email Search Terms ||||
|---|---|---|---|
| Part | Email address | Date Range | Keyword(s) |
| Federal Trade Commission ("FTC") | between @cfpb.gov & @ftc.gov | 01/01/2018 – 09/30/2021 | Moneygram OR "Money gram" OR MGI OR MG |
| The New York State Department of Financial Services ("NYDFS"); | Between @cfpb.gov & @dfs.ny.gov | 01/01/2018 – 09/30/2021 | Moneygram OR "Money gram" OR MGI OR MG |
| The New York State Office of the Attorney General ("NY AG"); | Between @cfpb.gov & @ag.ny.gov | 01/01/2018 – 09/30/2021 | Moneygram OR "Money gram" OR MGI OR MG |
| Public Citizen | Between @cfpb.gov & @citizen.org | 01/01/2018 – 10/31/2021 | Moneygram OR "Money gram" OR MGI OR MG |
| Consumer Financial Protection Bureau ("CFPB") | To/from/cc/bcc @cfpb.gov | 01/01/2018 – 09/30/2021 | (Moneygram OR "Money gram" OR MGI OR MG) AND (Rohit OR Chopra OR Jennifer OR Howard OR Rebecca OR Smullin) |

23. In subsequent phone conversations and correspondence, the CFPB informed MoneyGram's counsel that the fifth search above was returning an inordinately high number of documents, which was causing issues with processing the Request.

24. During these and subsequent conversations, MoneyGram's undersigned counsel discussed with the CFPB that the Request was on behalf of MoneyGram, and the CFPB attorneys acknowledged their understanding that MoneyGram's counsel was requesting the information on behalf of MoneyGram in connection with the CFPB's litigation against MoneyGram.

25. In a February 17, 2022 phone conference, the CFPB informed MoneyGram's counsel that the fifth search was returning high hit counts because it was pulling in communications from the CFPB's consumer complaints department that routinely sends consumers who file complaints a "data dictionary" containing the companies who are included in the CFPB's consumer complaint database, which included MoneyGram. The CFPB indicated that it was able to refine the search to exclude those results. During that phone conference, the CFPB also said that they could not provide hit counts for each search, but said that approximately 50% of the documents returned by all of the searches came from the first search, 35%-40% of the documents were returned by the second search, and the remaining documents were returned by last three searches. The CFPB indicated they were in the process of loading the documents into a document review database where they would be reviewed for responsiveness, exemptions, and any other concerns.

26. On February 25, 2022, MoneyGram's counsel had another phone conference with the CFPB, which the CFPB confirmed in a February 25, 2022 email. During the conference, MoneyGram's counsel requested that the agency produce records on a rolling basis and asked the CFPB to prioritize parts of the Request in the following order: 1, 4, 5, 3, 2. MoneyGram's counsel

also requested that the CFPB prioritize production of documents containing the keywords "Howard" or "Chopra." MoneyGram's counsel also agreed to waive the review and production of newsletters and compilations of news clipping sent to CFPB employees as part of blast emails (but did not waive the review and production of secondary replies of forwarding of those blast emails). The CFPB estimated that an interim response to the modified search of Nos. 1, 4, and 5 would be delivered by March 7, 2022. A true and correct copy of this communication is attached as Exhibit C.

*The CFPB's Series of Interim Responses*

27. Paul Levitan of the CFPB provided an interim response on March 7, 2022 and reported that the CFPB was "unable to locate any responsive records at this time" in "search part 1, search part 4 and search part 5[,]" and after a reasonable search within the Office of Technology and Innovation. A true and correct copy of this communication is attached as Exhibit D.

28. On April 20, 2022, Mr. Levitan again provided an interim response and reported that the CFPB was unable to "to locate any responsive records at this time," after conducting a "reasonable search within the Office of Technology and Innovation for email records that would be responsive to your request." A true and correct copy of this communication is attached as Exhibit E.

29. On May 10, 2022 and May 26, 2022 the CFPB provided status updates by email but did not report on the substance of any of the search results. True and correct copies of these communications are attached in Exhibit F.

30. On June 1, 2022, MoneyGram's counsel emailed the CFPB a May 31, 2022 letter with five questions and action items:

> 1. Please provide a fulsome status update on all five categories of the narrowed search terms. Explain what outstanding tasks exist for each of the

       2. Please confirm whether any responsive emails are being withheld on the basis of any exemptions. If so, **please take reasonable steps necessary to segregate and release nonexempt information, for example, by providing a list of such emails or redacting arguably exempt content while otherwise producing the dates, senders, recipients, copied and blind copied parties and the email subject line (i.e., header information)**. *See* § 552(a)(8)(A)(ii). Please also confirm that you have considered the foreseeable harm standard as required by the presumption of openness.

       3. Please reinstate our initial request of January 21, 2022 and resume your search for *all* responsive records. In addition to emails, **we request a review of** hard copy documents, **text messages**, phone call history, and any other applicable sources of information.

       4. Please explain your search methods and reasons for limiting your search to the "Office of Technology and Innovation."

       5. Please provide an estimated completion date for your final response.

(Emphasis added). A true and correct copy of this communication is attached as Exhibit G.

       31.    On June 2, 2022, the CFPB responded to MoneyGram's counsel's June 1, 2022 email with partial answers to the five questions. The CFPB indicated that it anticipated issuing a third response to MoneyGram's outstanding requests by mid-June 2022. At that time, remaining requests included (i) communications between the CFPB and NYDFS, (ii) communications between the CFPB and NYAG, and (iii) results from reinstating the initial request of January 21, 2022. A true and correct copy of this communication is attached as Exhibit H.

*CFPB FOIA Office's Final Response to the Request*

       32.    On June 29, 2022, the CFPB provided a Final Response to the Request indicating that the CFPB located responsive records but that they would be "withheld in full" pursuant to FOIA exemptions 5, 7(A), and 8 pursuant to 5 U.S.C. § 552 (b)(5), (b)(7)(A), and (b)(8). A true and correct copy of this communication is attached as Exhibit I.

11

*MoneyGram's Appeal of the Request*

33. On July 8, 2022, MoneyGram timely appealed the CFPB FOIA Office's Final Response on multiple grounds, including: (i) that the CFPB performed an inadequate search for records and did not sufficiently explain the appropriateness of its search methods; (ii) that the CFPB failed to perform a fulsome and adequate search for all responsive records after MoneyGram reinstated its initial request in a May 31, 2022 letter; (iii) that the CFPB failed to make a "reasonable effort to estimate the volume" of any information withheld pursuant to 5 U.S.C. § 552(a)(6)(F) and/or failed to provide such an estimation; (iv) that the CFPB failed to demonstrate that it took reasonable steps necessary to segregate and release nonexempt information, pursuant to 5 U.S.C. § 552(a)(8)(A)(ii) in withholding responsive records based on 5, 7(A), and 8; (v) that the CFPB should have exercised its discretion to release any exempt information because disclosure would be in the public interest and inform the public about violations of the public trust; and (vi) the CFPB's conclusory response did not demonstrate compliance with the four tenets in Attorney General Merrick Garland's March 15, 2022 Memorandum for Heads of Executive Departments and Agencies regarding Freedom of Information Act Guidelines.

34. For any responsive documents that the CFPB withheld, MoneyGram's counsel urged the CFPB to produce the responsive documents, including header information and dates, and redact only the substantive content that is subject to the claimed exemption—to comply with 5 U.S.C. § 552(a)(8)(A)(ii).

35. MoneyGram also explained that producing such responsive records—either in redacted form or in full—might indicate that the then-incoming CFPB Director Chopra attempted

to improperly assert influence over an ongoing CFPB investigation prior to his official confirmation and swearing in as Director.

36. MoneyGram also explained that additional information regarding the CFPB's search methods would promote openness and transparency, and would ensure fairness and effectiveness in the FOIA process.

37. On August 11, 2022, CFPB Assistant General Counsel for Litigation and Oversight, Laura M. Hussain, issued a Final Appellate Determination granting in part, and denying in part the appeal, and remanding FOIA Request No. 2022-0115-F. A true and correct copy of this communication is attached as Exhibit J.

38. Ms. Hussain determined that a reasonable search for responsive records was conducted, but that the CFPB FOIA Office "failed to either provide a reasonable estimate of the volume of information withheld or articulate a reason for withholding such an estimate[,]" and did "not make clear whether appropriate efforts were made to reasonably segregate and produce nonexempt information."

39. Ms. Hussain found that the "FOIA Office should make a reasonable attempt to estimate the volume of records withheld, or adequately articulate the protected interests that would be harmed by disclosure of such an estimate" and that "the Request is remanded to the FOIA Office for further evaluation of whether any reasonably segregable, non-exempt information can be produced." She also found that the FOIA Office "may consider whether discretionary disclosure of any exempt material is appropriate" when reprocessing remanded portions of the Request.

*CFPB FOIA Office's Silence and Constructive Denial of the Request*

40. On August 15, 2022, Danielle Duvall Adams issued an Acknowledgement Letter on behalf of the CFPB FOIA Office, informing MoneyGram's counsel that the Request had been

"remanded back to the FOIA Office for a reasonable estimate of the volume of information withheld or articulate a reason for withholding such an estimate and to make clear whether appropriate efforts were made to reasonably segregate and produce non-exempt information." A true and correct copy of this communication is attached as Exhibit K.

41. The CFPB FOIA Office assigned the Request a new FOIA request number.

42. The Acknowledgement Letter also noted a backlog of requests, and that MoneyGram would be charged for the search, review, and duplication costs of complying with the Request.

43. On that same day, August 15, 2022, MoneyGram's counsel responded to the Acknowledgement Letter via email with two specific requests for CFPB's FOIA Office in considering certain issues on remand. Among other things, MoneyGram's counsel again emphasized that the FOIA Office could reasonably segregate and produce non-exempt header information and redact only such arguably exempt content from the body of responsive emails pursuant to 5 U.S.C. § 552(a)(8)(A)(ii).

44. The CFPB FOIA Office never responded.

45. On the one-year anniversary of the Request, January 24, 2023, MoneyGram's counsel emailed the CFPB FOIA Office a letter, noting that one full year had passed since the initial Request was made and five months had passed since the Acknowledgement Letter issued, which constituted unreasonable delay, unlawful withholding of records, and constructive denial of MoneyGram's FOIA Request. A true and correct copy of this communication is attached as Exhibit L.

46. MoneyGram's counsel made clear that the Acknowledgement Letter failed to explain the next steps in the process and failed to provide a timeframe for the remand; that the remanded request should have been treated as a new request subject to a 20 business-day response timeline according to 5 U.S.C. § 552(a)(6) and FOIA guidance; and that the remanded Request should have been placed at

the front of the review queue pursuant to FOIA guidance. MoneyGram requested a response within one week or indicated that the Company would be forced to proceed to litigation.

47. The CFPB FOIA Office never responded.

48. These stonewalling tactics violate the FOIA on multiple grounds and constitute constructive denial of the Request and improper withholding of records required to be disclosed under FOIA. The agency's actions raise further concern about the CFPB's lack of transparency and concealment of relevant communications that would be relevant to the motivation, propriety, and legitimacy of the CFPB's decision to file suit against the Company in April 2022.

## CAUSE OF ACTION

## COUNT I

## Violation of the Freedom of Information Act 5 U.S.C. § 552

49. Plaintiff realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

50. Plaintiff properly requested records within the possession, custody, and control of CFPB.

51. Because CFPB is an "agency" subject to FOIA under 5 U.S.C. §§ 551(1) and 552(f)(1), it must release all responsive, non-exempt records and provide legitimate reasons for withholding any responsive records.

52. By failing to promptly produce responsive, non-exempt records, and summarily withholding all documents without lawful basis, CFPB is wrongfully withholding agency records subject to release under FOIA and in violation of 5 U.S.C. §§ 552(a)(3) and (a)(8)(i)(I).

53. By failing to perform a fulsome and adequate search for all responsive records and failing to make a "reasonable effort to estimate the volume" of any information withheld, the CFPB is violating 5 U.S.C. §§ 552(a)(3) and (a)(6)(F).

54. By failing to segregate exempt information from otherwise non-exempt records responsive to the Request, the CFPB is wrongfully withholding agency records subject to release under FOIA in violation of 5 U.S.C. § 552(a)(8)(A)(ii).

55. By failing to furnish any responsive documents, the CFPB has abused its discretion and withheld information that is in the public interest and that would contribute significantly to public understanding of the operations or activities of the government, in contravention of 5 U.S.C. § 552(a)(8)(A)(ii).

56. Under 5 U.S.C. § 552(a)(6)(A)(i) there is a 20-day deadline by which a federal agency must make and issue a decision regarding compliance with a request for records. Only in "unusual circumstances" may an agency extend the time to make a final determination by no more than 10 additional working days, but it must provide written notice to the requester setting forth the unusual circumstances for the extension and "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). FOIA guidance provides that a remanded request should be treated as a new FOIA request, remanded requests should be placed at the front of an agency's FOIA request queue, and that a remand of an initial action should explain next steps, such as timeframe for the remand. After issuing its Acknowledgement Letter, and as of the date of this Complaint, the CFPB FOIA Office has intentionally ignored all follow-up communications from MoneyGram's counsel and has taken no action on Plaintiff's request. The CFPB has not requested information from MoneyGram that would toll the 20-day period as contemplated by 5 U.S.C. § 552(a)(6)(A)(i)(I). Accordingly, the CFPB has violated FOIA's applicable time limits and MoneyGram should be deemed to have exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiff, and that the Court issue the following relief:

1. An Order that the Defendant promptly conduct a diligent search for any and all records responsive to Plaintiff's Request and demonstrate that it employed reasonable search methods most technologically likely to lead to the discovery of records responsive to Plaintiff's Request (including through direct inquiry of specified individuals and review of work-related text and ephemeral messages), selected from among those methods available to Defendant;

2. An Order directing Defendant to produce by a date certain all non-exempt records responsive to Plaintiff's Request;

3. An Order that Defendant produce, by a date certain, a *Vaughn* Index[3] identifying any responsive records withheld under a claim of exemption, demonstrating that Defendant has properly segregated exempt information from non-exempt records responsive to the Request;

4. A declaration that Defendant's actions, including failing to reprocess the Request on remand, violated Plaintiff's statutory rights under 5 U.S.C. § 552;

5. An Order awarding to Plaintiff its reasonable attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

///

///

---

[3] "Vaughn Index" is a term derived from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

6.	An Order granting to Plaintiff all further relief to which Plaintiff may be entitled or that the Court deems just and proper.

Dated:   February 27, 2023

By: */s/ Ephraim Wernick*
Ephraim Wernick (D.C. Bar 497158)
VINSON & ELKINS LLP
2200 Pennsylvania Ave., NW
Washington, DC 20037
Tel: (202) 639-6730
ewernick@velaw.com

*Counsel for Plaintiff MoneyGram International, Inc.*